

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-7-2003

# Kanger v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-4539

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Kanger v. Atty Gen USA" (2003). *2003 Decisions.* Paper 125.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/125

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 02-4539

ARTHUR KANGER; SILVIA KANGER;
DELIA KANGER; JULIA KANGER,

Petitioners

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF
THE UNITED STATES AND THE IMMIGRATION
AND NATURALIZATION SERVICE,

Respondent

PETITION FOR REVIEW OF THE DECISION
OF THE BOARD OF IMMIGRATION APPEALS
Nos. A29 833 313, A29 833 412
A70 867 836, A70 867 837

Submitted Pursuant to LAR 34.1(a)
November 3, 2003

Before: McKEE, SMITH and WEIS, *Circuit Judges*

(Filed November 7, 2003)
_____

OPINION OF THE COURT
_____

SMITH, *Circuit Judge.*

Arthur Kanger and his wife Silvia appeal from an order by the Board of

Immigration Appeals ("BIA"), affirming the denial by the Immigration Judge ("IJ") of

their applications for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and for relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT").[1] For the reasons set forth below, we will affirm.[2]

The Kangers arrived in the United States from the former Soviet Socialist Republic of Latvia in January 1991. According to Mr. Kanger, the primary reason for leaving Latvia was "to save [his] family and [him]self from persecution from Latvian Soviet Police and KGB." AR 327. Consistent with this objective, the Kangers overstayed their 30 day visitor visa and Mr. Kanger filed an application for asylum on April 30, 1991. Although Latvia gained its independence from the former Soviet Union in August 1991, the Kangers did not return. Finally, in March 1998, the Kangers were served with Notices to Appear which charged them with overstaying their visitor status.

On December 18, 1998, Mr. Kanger supplemented his 1991 asylum application with a sworn statement that added a claim for asylum on the basis of past persecution because he was perceived as a Jew and was a member of the non-Latvian ethnic minority. Mr. Kanger also asserted that he would be persecuted on this basis if he were returned to Latvia. In addition, he expressed a fear of future persecution by former police and KGB

---

[1]Their children, Delia and Julia, did not file applications for asylum themselves. Accordingly, their claims are dependent on those of their parents pursuant to 8 U.S.C. § 1158(b)(3).

[2]We have jurisdiction to review the BIA's order pursuant to INA § 242(a), 8 U.S.C. § 1252(a); *see also Abdulai v. Ashcroft*, 239 F.2d 542, 549 n.2 (3d Cir. 2001).

2

officials based on his knowledge of their unlawful conduct before Latvia obtained its independence and his support, along with his wife's, of the Latvian independence movement.

The Kangers conceded their deportability during a hearing before the IJ, but they contested the allegation in the Notices to Appear that they were citizens of Latvia. During the pendency of their applications before the IJ, Mrs. Kanger filed an application for asylum which sought asylum based on her husband's application and because she was "afraid for [her] safety and that of [her] children." In her testimony before the IJ, Mrs. Kanger affirmed that she became aware of the fact that she was of Jewish descent only after she arrived in the United States and was informed that her brother, who had lived in Latvia, had been killed. She testified that his body was found with the Star of David allegedly carved into it by a knife. Mrs. Kanger testified that she feared how she and her family would be treated if they returned to Latvia and her Jewish ancestry were revealed. She also explained that she was afraid to go back because her daughter had been called names and a Star of David had been drawn on her backpack at school. Mrs. Kanger acknowledged that her mother spoke Yiddish, that she had buried her mother in a Jewish cemetery in Latvia in 1985 and that the ceremony was conducted by a rabbi. She explained that her husband did not know she was Jewish though because he did not attend the ceremony, choosing to wait outside the cemetery on the street. According to Mrs. Kanger, her husband paid the funeral invoice which bore the Star of David on it.

3

In a detailed and well-reasoned decision dated May 29, 2001, the IJ denied the Kangers' applications for asylum, withholding of removal, and relief under the CAT. She found that neither Mr. nor Mrs. Kanger was credible. The IJ concluded that Mr. Kanger's claims of past persecution and future persecution based on anti-Semitism were not worthy of belief, particularly in light of the country reports which indicate that there "is no longer evidence of systemic harm against Jews in Latvia[.]" In addition, the IJ found that Mr. Kanger's fear of retaliation by former KGB officials based on his knowledge of corruption and his past involvement in the Latvian independence movement was unreasonable in light of Latvia's subsequent independence. The IJ also rejected Mrs. Kanger's assertion that she only realized she was Jewish after arriving in the United States and concluded that Mrs. Kanger had failed to meet her burden of demonstrating a well-founded fear of persecution based on her Jewish heritage if returned to Latvia. In sum, the IJ recognized that the Kangers' "claims changed over time," belatedly seeking asylum based on a fear of future persecution as a result of Mrs. Kanger's Jewish heritage and Mr. Kanger's alleged perception as a Jew.[3] She concluded that the Kangers had failed to meet their burden of demonstrating persecution or a well-founded fear of persecution and denied their applications for relief.

The BIA affirmed, "without opinion, the results of the [IJ's] decision below." AR

---

[3]As the IJ noted, the Kangers' claims for asylum were not articulated with precision. Indeed, after the parties rested, the IJ decided to schedule closing statements so counsel could "figure out . . . what you think the asylum claim in fact is in these cases." AR 567.

2.  Accordingly, the IJ's decision became the final decision of removal and is subject to review here pursuant to 8 U.S.C. §§ 1158(b)(1) and 1252(a).  *See Abdulrahman v. Ashcroft*, 330 F.3d 587, 591 (3d Cir. 2003); *Abdulai v. Ashcroft*, 239 F.3d 542. 549 n.2 (3d Cir. 2001).  Our review in an immigration matter is circumscribed.  We limit our inquiry to ensuring that the IJ's findings are supported by substantial evidence.  *See, e.g., Gao v. INS*, 299 F.3d 266, 272 (3d Cir. 2002) ("Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard."); *Abdille v. Ashcroft*, 242 F.3d 477, 483 (3d Cir. 2001).  We may reverse only where the evidence compels a conclusion contrary to that of the IJ.  8 U.S.C. § 1252(b)(4)(B) ("the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ."); *Abdille*, 243 F.3d at 483-84 (citing *INS v. Elias-Zacarias*, 502 U.S. 478,  481 n.1 (1992)).

The substantial evidence standard also applies to adverse credibility determinations.  *Gao*, 299 F.3d at 272.  Accordingly, an adverse credibility finding should not be disturbed "unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'"  *Id.* (quoting *Senathirajah v. INS*, 157 F.3d 210, 216 (3d Cir. 1998)).  Specific reasons should be given for finding a witness not credible and those "reasons must bear a legitimate nexus to the finding."  *Balasubramanrim v. INS*, 143 F.3d 157, 162 (3d Cir. 1998).

We conclude that the IJ's adverse credibility determination with respect to both Mr. and Mrs. Kanger is fully supported by the record. The IJ appropriately considered the entire record and identified numerous legitimate reasons for disbelieving the Kangers' testimony that they each feared being perceived or identified as Jewish if returned to Latvia. Each of these reasons are supported by the record. Because there is ample evidence to support the IJ's adverse credibility determinations and the denial of the Kangers' applications for asylum, withholding of removal and relief under the CAT, we will affirm the final decision of the BIA and dismiss the petition for review.

————————————————————————————

TO THE CLERK:

Please file the foregoing Opinion.

By the Court:

 /s/ D. Brooks Smith
Circuit Judge